**L. W. SIMPSON and Shirley Simpson, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 75–39–2.

United States District Court, S. D. Iowa, C. D.

Nov. 19, 1976.

---

Richard A. Malm, John H. Raife, Des Moines, Iowa, for plaintiffs.

George H. Perry, U. S. Atty., Des Moines, Iowa, Thomas R. Jones, Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## ORDER

HANSON, Chief Judge.

This matter is before the Court on cross motions for summary judgment, under Rule 56, Federal Rules of Civil Procedure. The narrow question for decision is whether corporate income tax liquidation treatment is justifiable for a sole proprietorship which had employed a statutory election to be taxed at corporate income tax rates for eight years, until the termination of that election by operation of law. At issue is the validity of Treasury Regulation § 1.1361–16(b), which provides that corpo-

rate liquidation treatment shall be imposed upon proprietorships such as the plaintiffs'.

## I. BACKGROUND

The parties have stipulated to the facts.

■ At all times material to this case, plaintiff L. W. Simpson operated a trucking business as a sole proprietor under the name "Mid-Seven Transportation Co." Effective January 1, 1960, he made an election under § 1361(a) of the Internal Revenue Code to have his sole proprietorship taxed as a domestic corporation for that year and all subsequent years.[1] The election was

1. SEC. 1361. UNINCORPORATED BUSINESS ENTERPRISES ELECTING TO BE TAXED AS DOMESTIC CORPORATIONS.

(a) *General Rule.*—Subject to the qualifications in subsection (b), an election may be made, in accordance with regulations prescribed by the Secretary or his designate, not later than 60 days after the close of any taxable year of a proprietorship or partnership owning an unincorporated business enterprise, by the proprietor or all the partners, owning an interest in such enterprise at any time on or after the first day of the first taxable year to which the election applies or of the year described in subsection (f), to be subject to the taxes described in subsection (h) as a domestic corporation for such year and subsequent years. No election (other than an election referred to in subsection (f)) may be made under this subsection after the date of enactment of this sentence.

(b) *Qualifications.*—The election described in subsection (a) may not be made with respect to an unincorporated business enterprise unless at all times during the period on or after the first day of the first taxable year to which the election applies or of the year described in subsection (f), as the case may be, and on or before the date of election—

(1) such enterprise is owned by an individual, or by a partnership consisting of not more than 50 individual members;

(2) no proprietor or partner having more than a 10 percent interest in profits or capital of such enterprise is a proprietor or a partner having more than a 10 percent interest in profits or capital of any other unincorporated business enterprise taxable as a domestic corporation;

(3) no proprietor or partner of such enterprise is a nonresident alien or a foreign partnership; and

(4) such enterprise is one in which capital is a material income producing factor, or 50 percent or more of the gross income of such enterprise consists of gains, profits, or income derived from trading as a principal or from buying and selling real property, stock, securities, or commodities for the account of others.

(c) *Corporate Provisions Applicable.*—Under regulations prescribed by the Secretary or his delegate, an unincorporated business enterprise as to which an election has been made under subsection (a), shall be considered a corporation for purposes of this subtitle, except chapter 2 thereof, with respect to operation, distributions, sale of an interest, and any other purpose; and each owner of an interest in such enterprise shall be considered a shareholder thereof in proportion to his interest.

(d) *Limitation.*—A partner or proprietor of an unincorporated business enterprise as to which an election has been made under subsection (a) shall not be considered an employee for purposes of section 401(a) (relating to employees' pension trusts, etc.) other than an employee within the meaning of section 401(c)(1) (relating to self-employed individuals), or for purposes of section 405 (relating to qualified bond purchase plans) other than an employee described in section 405(f).

(e) *Election Irrevocable.*—Except as provided in subsections (f) and (n), the election described in subsection (a) shall be irrevocable—

(1) with respect to an enterprise as to which such election has been made and the proprietor or partners of such enterprise; and

(2) any unincorporated successor to the business of such enterprise and the proprietor or partners of such successor.

(f) *Change of Ownership.*—In any year in which the electing proprietor or partners have an interest of 80 percent or less in profits and capital of an enterprise described in subsection (c), such enterprise shall be considered a domestic corporation for such year or for subsequent years unless the proprietor or partners of such enterprise make a new election in accordance with subsection (a).

(g) *Constructive Ownership.*—For purposes of subsection (f), the ownership of an interest shall be determined in accordance with the rules for constructive ownership of stock provided in section 267(c) other than paragraph (3) thereof.

(h) *Imposition of Taxes.*—The unincorporated business enterprise as to which an election has been made under subsection (a) shall be subject to—

(1) the normal tax and surtax imposed by section 11,

(2) the accumulated earnings tax imposed by section 531, and

(3) the alternative tax for capital gains imposed by section 1201.

(i) *Personal Holding Company Income.*—

(1) *Excluded from Income of Enterprise.*—There shall be excluded from the gross income of the enterprise as to which an elec-

irrevocable, § 1361(e). In 1966, Congress enacted PL 89–389 which amended Subchapter R and added § 1361(n) to the Internal Revenue Code. Section 1361(n) provided for the voluntary revocation of existing elections, prohibited new elections under § 1361, and stated that any existing election not voluntarily revoked would terminate by operation of law on January 1, 1969.[2] Mid-Seven Transportation Co. employed the § 1361(a) election from 1960 through 1968, paid income taxes on form 1120, and did not voluntarily revoke its election. In October of 1968 regulation § 1.1361–16(b) was issued, requiring fictional corporate liquidation treatment for elections not voluntarily revoked before January 1969.[3] In 1970 the

tion has been made under subsection (a) any item of gross income (computed without regard to the adjustments provided by section 543(b)(3) or (4) if, but for this paragraph, such item (adjusted, where applicable, as provided in section 543(b)(3) or (4)) would constitute personal holding company income (as defined in section 543(a)) of such enterprise.

(2) *Income and Deductions of Owners.*—Items excluded from the gross income of the enterprise under paragraph (1), and the expenses attributable thereto, shall be treated as the income and deductions of the proprietor or partners (in accordance with their distributive shares of partnership income) of such enterprise.

(3) *Distributions.*—If—

(A) the amount excluded from gross income under paragraph (2) exceeds the expenses attributable thereto, and

(B) any portion of such excess is distributed to the proprietor or partner during the year earned,

such portion shall not be taxed as a corporate distribution. The portion of such excess not distributed during such year shall be considered as paid-in surplus or as a contribution to capital as of the close of such year.

(j) *Computation of Taxable Income.*—In computing the taxable income of an unincorporated business enterprise as to which an election has been made under subsection (a)—

(1) a reasonable deduction shall be allowed for salary or compensation to a proprietor or partner for services actually rendered; and

(2) there shall be allowed as deductions only such items properly allocable to the operation of the business of such enterprise, except deductions allocable to the proprietor or partners under subsection (1)(2).

(k) *Distributions Other than in Liquidation.*—Except as provided in subsection (1), a distribution with respect to a proprietorship or partnership interest by an enterprise as to which an election has been made under subsection (a), other than a distribution of personal holding company income under subsection (i)(3), shall be treated as a corporate distribution in accordance with part I of subchapter C of this chapter.

(*l*) *Distributions in Liquidation.*—A distribution in partial or complete liquidation with respect to a proprietorship or partnership interest by an enterprise as to which an election has been made under subsection (a), shall be treated as a corporate liquidation in accordance with part II of subchapter C of this chapter.

**2.** § 1361(n) *Revocation and Termination of Elections.*—

(1) *Revocation.*—An election under subsection (a) with respect to an unincorporated business enterprise may be revoked after the date of the enactment of this subsection by the proprietor of such enterprise or by all the partners owning an interest in such enterprise on the date on which the revocation is made. Such enterprise shall not be considered a domestic corporation for any period on or after the effective date of such revocation. A revocation under this paragraph shall be made in such manner as the Secretary or his delegate may prescribe by regulations.

(2) *Termination.*—If a revocation under paragraph (1) of an election under subsection (a) with respect to any unincorporated business enterprise is not effective on or before December 31, 1968, such election shall terminate on January 1, 1969, and such enterprise shall not be considered a domestic corporation for any period on or after January 1, 1969.

**3.** Reg. § 1.1361–16(b).

. . . .

(b) *Termination of all elections on January 1, 1969.* If any election under section 1361(a) with respect to an unincorporated business enterprise would be effective on January 1, 1969, without regard to paragraph (2) of section 1361(n) and the provisions of this paragraph, such election shall terminate on January 1, 1969. The section 1361 corporation and its owners shall be treated as if the corporation had distributed its assets in a complete liquidation on January 1, 1969. The effect of the liquidation on the owners shall be determined under the provisions of sections 331 and 334(a). (However, a liquidation which is followed by a transfer to another corporation of all or part of the assets of the liquidating corporation or which is preceded by such a transfer may have the effect of the distribution of a dividend or of a transaction in which no loss is recognized and gain is recognized only to the extent of

plaintiffs filed their joint income tax return for 1969 on form 1040. Long term capital gains from the fictional liquidation of Mid-Seven Transportation Co. were not reported in income. In 1972 plaintiffs computed their income tax due based on Part I of Subchapter Q of the Internal Revenue Code, relating to income averaging. In computing the base period income under § 1302, income for 1969 did not include long term capital gain attributable to the fictional liquidation of Mid-Seven Transportation Co. on January 1, 1969. The Internal Revenue Service (IRS) determined tax deficiencies for both 1969 and 1971 that totaled, with interest, $55,100.70. The deficiency was solely a result of plaintiffs' failure to report $155,841.27 of long term capital gains in tax year 1969 income as required by the liquidation treatment in regulation § 1.1361–16(b).[4] Plaintiffs paid the IRS assessments and filed claims for refund. The claims for both 1969 and 1971 were denied by the IRS, and plaintiffs subsequently filed this action. This Court is of the opinion that regulation § 1.1361–16(b) is invalid, and the taxpayers are entitled to the requested refund. Termination of the § 1361(a) election by operation of law cannot result in corporate liquidation treatment. Therefore, the plaintiffs' motion for summary judgment will be granted.

## II. INVALIDITY OF THE REGULATION AS AN ABUSE OF DISCRETION

■ Section 1361 was added to the Internal Revenue Code in 1954. It provided qualifying proprietorships the opportunity to be taxed at domestic corporate income tax rates. The purpose for enacting § 1361 was to allow "the business to select the form of organization which is most suitable to its operations without being influenced by Federal income tax considerations." Senate Report No. 1622, 83rd Cong., 2nd Session, U.S.Code Cong. & Admin.News 1954, 4629. Thus, qualifying proprietorships could choose their organizational form on the basis of business considerations other than the need to react to income tax considerations. The Senate Finance Committee felt that the election would be widely used when taxpayers could be sure of the income tax consequences of making the election.[5] Evidently, however, taxpayers never were sure of the consequences. Regulations §§ 1.1361–1 through 1.1361–15 were not issued by the Treasury until 1960, six years after the enactment of Section 1361, and between 1955 and 1966 less than 1000 businesses made the Section 1361 election.[6] In 1966, because of lack of use, Congress enacted PL 89–389 repealing Section 1361 effective January 1, 1969 and amended the section by adding subsection (n). As previously stated, in October, 1968, the Treasury issued regulation § 1.1361–16 dealing with the manner and income tax effects of voluntary revocations and terminations by operation of law of the Section 1361 election.

The authority of the Treasury to promulgate regulations stems from Section 7805 of the Internal Revenue Code. It provides, in part, that:

(a) *Authorization.*—Except where such authority is expressly given by this title to any person other than an officer or employee of the Treasury Department, the Secretary or his del-

---

"other property." See sections 301 and 356.) The provisions of paragraph (c)(1) of § 1.1361–11 are not applicable to a business enterprise with respect to which an election has been terminated under this paragraph. The requirements of section 6043 (relating to information returns) and paragraph (d) of § 1.331–1 (relating to returns of shareholders) must be complied with. [Reg. § 1.1361–16.]

4. Plaintiffs allege and the defendant has not refuted that the long term capital gain of $155,841.27 was determined as follows:

| | |
|---|---:|
| Net book value of Mid-Seven Transportation Co. Assets on 1/1/69 | $289,551.73 |
| Franchise increase in value | 30,765.60 |
| Land increase in value | 3,480.75 |
| | 323,798.08 |
| Net book value of Mid-Seven Transportation Co. Assets on 1/1/60 | − 167,956.81 |
| | $155,841.27 |

5. Senate Report No. 1983, Pt. III, § 67(a), 85th Cong., 2nd Sess. (1958), in 3 U.S.Code Cong. & Admin.News (1958) at p. 4875.

6. Senate Report No. 1007, 89th Cong., 2nd Sess., Cong.Rec., Mar. 2, 1966, at p. 4792.

egate shall prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue.

The broadly stated authorization for the Treasury to promulgate regulations has been interpreted by the United States Supreme Court to have specific limits. In *Manhattan General Equipment Co. v. C.I.R.*, 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1935), the Court held that:

> The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law—for no such power can be delegated by Congress—but the power to adopt regulations to carry into effect the will of Congress *as expressed by the statute.* A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity. *Lynch v. Tilden Produce Co.*, 265 U.S. 315, 320–322, 44 S.Ct. 488, 68 L.Ed. 1034; *Miller v. United States*, 294 U.S. 435, 439–440, 55 S.Ct. 440, 79 L.Ed. 977, and cases cited. And not only must a regulation, in order to be valid, be consistent with the statute, but it must be *reasonable. International Ry. Co. v. Davidson*, 257 U.S. 506, 514, 42 S.Ct. 179, 66 L.Ed. 341. (emphasis added).

The defendant has argued that regulation 1.1361–16(b) is consistent with Section 1361, reasonable in its corporate liquidation treatment upon termination of the 1361(a) election, and therefore valid. In addition, it is asserted that Section 7805 provides the government with a general authorization and that subsections 1361(c) and (n)(1) provide specific authorization to promulgate regulation § 1.1361–16(b). Further, the government states that corporate liquidation treatment upon termination of the 1361(a) election by operation of law is the will of Congress, and in support cites a 1966 Senate Finance Committee Report which reads:

> In view of your committee's amendment repealing . . . [section 1361] effective January 1, 1969, your committee sees no reason why an unincorporated business which has made an election to be taxed like a corporation should be required to remain in that status until that date, whether or not the owners of the business desire to form an actual corporation to continue the business. Accordingly, your committee has included an amendment to permit an election to be revoked on or before December 31, 1968. If an election is not revoked on or before this date, it will be terminated on January 1, 1969. The revocation or termination of an election (without any transfer to an actual corporation) under your committee's amendment will be treated, for Federal income tax purposes, *as a complete liquidation of a corporation.* S.Rept.No.1007, 89th Cong., 2d Session 10 (1966), U.S.Code Cong. & Admin.News 1966, pp. 2141, 2150.

Regulation 1.1361–16(b) ultimately paralleled this Senate Committee Report in its corporate liquidation treatment.

Defendant continues that regulation 1.1361–16(b) is therefore authorized, consistent with the will of Congress and ultimately valid because it is, in addition, reasonable. The reasonableness argument is based upon the language in § 1361(c), which states that ". . . [an enterprise which has made the § 1361(a) election] shall be considered a corporation for purposes of this subtitle . . . with respect to operation, distributions, sale of an interest, and any other purpose; . . ." The defendant further urges that § 1.1361–16(b) is reasonable because the taxpayer reaped the benefits of corporate income tax treatment for several years, and having chosen not to incorporate and thereby defer their liquidation taxation, they must be expected to bear the reasonable taxation effected by § 1.1361–16(b). The defendant cites as support *Edward J. Prescott and Wanda D. Prescott v. Commissioner of Internal Revenue*, 66 T.C. No. 18 (1976), the only decision

to have faced the question presented by this case. This Court cannot agree with the reasoning of *Prescott.*

■ Subsection 1361(n)(1), added by PL 89–389 in 1966, clearly states that Congress has delegated authority to the Treasury to promulgate regulations concerning the *manner* of making § 1361 voluntary revocation of § 1361(a) elections. Regulation § 1.1361–16(a)(1) is a valid exercise of that delegated authority.[7] However, § 1361 contains no explicit authority delegated by the Congress to the Treasury to specify the income tax *effect* of a 1361(n)(1) voluntary revocation. The Treasury assumed that the authority granted them to specify the *manner* of making the voluntary revocation also implicitly contained the authority to specify the *effect* of such a revocation. This Court does not believe that to be a necessary implication. The products of the Treasury's

assumption were § 1.1361–16(a)(1) and (b). However, even if the assumption that authority to specify *manner* includes the authority to specify *effect* is accepted, it is clear that the authority granted the Treasury in § 1361(n)(1) is limited to § 1361(n)(1) voluntary revocations. There was no grant of authority by Congress for the Treasury to comment in any way on the income tax effect of a § 1361(n)(2) termination by operation of law. Section 1361(n)(2) contains no authorization for Treasury rules or regulations.

Defendant's position implies the arguments that § 1361(c) provides authorization for the promulgation of regulation § 1.1361–16(b) even if § 1361(n)(1) does not, and that, in conjunction with § 1361(c) or (n)(1) authorization, or even independent from § 1361 language, promulgation is justified as a § 7805 "needful . . . regu-

---

7. § 1.1361–16 *Revocation and Termination of Elections.*

(a) *Revocation of election after April 14, 1966*

(1) *Manner of revoking.* An election under section 1361(a) with respect to an unincorporated business enterprise may be revoked after April 14, 1966, and before January 1, 1969, in accordance with the provisions of this subparagraph. An election may be revoked by filing a statement that the proprietor or partners as the case may be, revoke the election under section 1361(a) to have the unincorporated business enterprise treated as a domestic corporation. The statement of revocation shall be filed on or before December 31, 1968, with the internal revenue officer with whom the enterprise would be required to file its income tax return if it were an actual corporation for the taxable year during which the statement is filed (see section 6091(b)(20)). Such statement of revocation shall set forth the names and addresses of, and shall be signed by, the proprietor of, or all of the partners owning a profit or capital interest in the enterprise on the date on which the revocation is filed. The statement must state the name, address, and employer identification number under which the income tax returns of the section 1361 corporation were filed for the prior taxable years during which the election was applicable, and the internal revenue officer with whom such returns were filed. The revocation shall be effective on the date on which the statement of revocation is filed (see section 7502 and the regulations thereunder) unless the statement of revocation specifies a later effective date, in which case the revocation shall be effective on such later date. However, no date after December 31,

1968 may be specified as the effective date. A revocation under this subparagraph is binding and may not be withdrawn.

(2) *Effect of revocation.* The section 1361 corporation and its owners shall be treated as if the corporation had distributed its assets in a complete liquidation on the effective date of the revocation made pursuant to subparagraph (1) of this paragraph. The effect of the liquidation on the owners shall be determined under the provisions of sections 331, 334(a) and, in appropriate cases, 341 o4 333 and 334(c). (However, a liquidation which is followed by a transfer to another corporation of all or part of the assets of the liquidating corporation or which is preceded by such a transfer may have the effect of the distribution of a dividend or of a transaction in which no loss is recognized and gain is recognized only to the extent of "other property." See sections 301 and 356.) If an effective revocation is made pursuant to subparagraph (1) of this paragraph, the provisions of paragraph (c)(1) of § 1.1361–11 are not thereafter applicable to the business enterprise, and the requirement of a written plan contained in paragraph (b) of § 1.1361–11 is not applicable in order for the section 1361 corporation to be considered to have made a distribution in complete liquidation resulting from the revocation. However, the requirements of section 6043 (relating to information returns), paragraph (d) of § 1.331–1 (relating to returns of shareholders), and, in appropriate cases, the regulations under section 333 (relating to complete liquidations in some one calendar month) must be complied with.

lation" because the Senate Finance Committee Report evidences the intent of Congress to create a corporate liquidation treatment upon termination. The Court disagrees. Section 1361(c) was a part of the original enactment of § 1361 in 1954. At that time and for 12 years thereafter, the election of § 1361(a) was irrevocable. The original Congressional intent behind § 1361 was to aid qualifying small businesses by lowering their income tax rates. Defendant is contending that the 89th Congress had a different intent as evidenced by § 1361(n), and that regulation § 1.1361–16(b) is valid as consistent with the intent of the 89th Congress. Assuming, *arguendo*, that the intent of Congress did change, regulation § 1.1361–16(b) cannot be authorized by § 1361(c). Section 1361(c) was written as a part of the original § 1361 which favored small businesses. A regulation such as § 1.1361–16(b), requiring costly corporate liquidation treatment, would be invalid as inconsistent with its statutory source. *Lynch v. Tilden Produce Co.*, 265 U.S. 315, 320–322, 44 S.Ct. 488, 68 L.Ed. 1034 (1924). Neither is regulation § 1.1361–16(b) justified as a "needful regulation" within the meaning of § 7805. A finding of needfulness in this situation would recognize and sanction legislative power within the Treasury Department.

Assuming, again *arguendo* that the defendant is correct in offering the 1966 Senate Finance Committee Report quoted above as the will of Congress, the Court remains unconvinced that § 1.1361–16(b) is a "needful regulation." In *Weeks, supra*, the Supreme Court stated that "the power . . . to prescribe . . . regulations [is the power] to carry into effect the will of Congress *as expressed by the statute* . . . ." (emphasis added). Therefore, even assuming the Senate Finance Committee Report to reflect the will of Congress, regulation § 1.1361–16(b) is not a "needful regulation" within the meaning of § 7805 because the assumed will of Congress is not "expressed by the statute" as required by the United States Supreme Court. Section 1361 is silent on this issue. It can only be concluded that reversion to proprietary tax-

ation without recognition of fictional long term capital gains is required.

■ The original "fiction" in § 1361, allowing a qualified proprietorship to elect income taxation at corporate tax rates, cannot by itself justify the fictional corporate liquidation treatment of § 1.1361–16(b). Apparent symmetry is insufficient. Congress created the original "fiction" by legislating § 1361; the liquidation fiction was created by the Secretary in regulation § 1.1361–16(b) without Congressional authorization. The regulation is therefore a nullity as an abuse of the Secretary's discretion.

III. A "§ 1361(a) CORPORATION" IS NOT A CORPORATION AND REGULATION 1.1361–16 IS UNREASONABLE IN REQUIRING CORPORATE LIQUIDATION TREATMENT ON TERMINATION OF THE 1361(a) ELECTION

■■ Even if regulation 1,1361–16(b) is not a nullity as an unauthorized abuse of discretion, it is a nullity because of the unreasonable characterization chosen by the regulation. A valid regulation must be reasonable, *Weeks, supra*. The electing proprietorship, Mid-Seven Transportation Co., is not a corporation within the meaning of the Internal Revenue Code or case law and therefore is not susceptible to corporate liquidation treatment without explicit Congressional statutory authorization to that effect.

In *Estate of J. O. Willett v. Commissioner*, 365 F.2d 760, 768 (1966), the Court of Appeals for the 5th Circuit considered the issue of whether a proprietorship electing under § 1361(a) to be taxed at corporate income tax rates was in fact a corporation. In determining that such an enterprise is not a corporation and therefore that regulation § 1.1361–5(b) is invalid, the Court of Appeals reasoned that:

Subsection (a) of Section 1361 provides that certain unincorporated businesses may elect to be taxed "*as a corporation* . . . ." (emphasis added). The Senate Report explains:

[Section 1361] is intended to permit proprietorships the opportunity to be taxed as a domestic corporation *while still conducting the business of the enterprise as a proprietorship or partnership.*

Terms providing that an electing enterprise shall be taxed "as" a corporation or "considered" a corporation, with corporate rules "made applicable," and that its transactions are "as if made by" a corporation, plainly mean that an electing enterprise is not a corporation but instead is a proprietorship which pays taxes at corporate rates. "Section 1361 corporation" may be a convenient label for an unincorporated business which has elected under Section 1361 to be taxed as a domestic corporation. *But it is no more than a label. Id.*

This Court agrees with the opinion of the 5th Circuit as expressed in *Willett,* and with the identical conclusion of the 7th Circuit as stated in *Mathis v. U. S.,* 430 F.2d 158, 160 (7 Cir. 1970), that a proprietorship electing under § 1361(a) to be taxed at corporate rates is not a corporation. To this Court, Mid-Seven Transportation Co. is not to be treated as a corporation by the Internal Revenue Code without explicit Congressional authorization. No such authorization exists, and regulation § 1.1361–16(b), by requiring corporate liquidation treatment, is therefore unreasonable, and under *Weeks, supra,* is invalid.

## IV. INVALIDITY DUE TO THE ABSENCE OF A TRANSACTION GIVING RISE TO "INCOME"

Regulation 1.1361–16(b) is also unreasonable because it requires income taxation in the absence of a transaction giving rise to "income" within the Supreme Court's interpretation of that term and the Sixteenth Amendment to the United States Constitution.

This case requires the Court to answer the difficult question of whether a gain has become sufficiently fixed and definite to be treated as income and accordingly taxed. Realization is the term used to describe gain which has reached the point where it may be taxed as income, § 1001, Internal Revenue Code. This is the sense in which the Supreme Court spoke of realization in *Eisner v. Macomber,* 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920).

 Ignoring for the moment this Court's opinion that the taxes at issue here were never legislated or authorized by Congress, it remains clear from *Eisner* that Congress cannot define income in any manner it chooses. Specifically, the Supreme Court in *Eisner* stated that taxable income is:

Not a gain *accruing* to capital, not a *growth* or *increment* of value *in* the investment; but a gain, a profit, something of exchangeable value *proceeding from* the property, *severed from* the capital however invested or employed, and *coming in,* being *"derived,"* that is, *received* or *drawn by* the recipient (the taxpayer) for his *separate* use, benefit and disposal;—*that* is income derived from property.

252 U.S. at 207, 40 S.Ct. at 193 (emphasis in original). The *Eisner* definition has not remained the strict rule that it once appeared to be. Subsequent Supreme Court cases have recognized the futility of attempting to capture and define the concept of realized income, *see United States v. Kirby Lumber Co.,* 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131 (1931). As a result, the Supreme Court has conceded that "no more can be said in general than that all relevant facts and circumstances must be considered." *Commissioner v. Wilcox,* 327 U.S. 404, 407, 66 S.Ct. 546, 549, 90 L.Ed. 752 (1946). At least one specific requirement does remain, however. In *Helvering v. Braun,* 309 U.S. 461, 469, 60 S.Ct. 631, 84 L.Ed. 864 (1940), the Supreme Court held, and it remains the law, that realization, while not requiring actual severance of gain from the income producing property, does require some *event* that fixed the gain with sufficient certainty so that it is reasonable to tax it.

This Court believes that the event required by *Braun,* signalling as it must the reasonableness of taxing the gain fixed by

the event, is missing in this case. Furthermore, and consistent with *Wilcox, supra*, a comprehensive review of the Supreme Court's struggles with the concept of realized income strongly indicates that a finding that income had been realized would be inappropriate in this case.[8] Earlier in this opinion it was stated that a "§ 1361 corporation" is not a corporation; it is merely a proprietorship being taxed at corporate income tax rates. Thus, there is no transactional event transferring assets from corporation to proprietorship as required to reasonably justify the liquidation treatment of § 1.1361–16(b). The effect of § 1361(n) is merely to raise the income tax rates for an entity that always has been and is a proprietorship.

Defendant contends that the taxable event resulting in the realization of income is the January 1, 1969 termination by operation of law of the § 1361(a) election. Simply naming a "transaction" date does not justify a finding that an income realizing event resulted from the change in income tax rates that occurred on that date. The requirement of income realization is not merely one of form. The $155,841.27 characterized as long term capital gains realized upon the "liquidation" of Mid-Seven Transportation Co. shows that Mr. Simpson is richer than he was in 1960 because of the increased capital value of Mid-Seven Transportation Co., but it also shows that the taxpayer has realized no income thereby. The assets are still held by Mid-Seven Transportation Co. As stipulated, Mr. Simpson received none of Mid-Seven Transportation Co.'s assets as a consequence of this "liquidation;" the business continues to operate as it has since the time of its § 1361(a) election in 1960, its assets, incidentally depleted by the payment of the assessed deficiency, being subject yet today to business risks which may wipe it out entirely. Mid-Seven Transportation Co. has never been a corporation. There has been no realizable event in this case, no income, and

the defendant's argument labeling the § 1361(n) termination date as such an event is unfounded. Reading the date of termination by operation of law as an income realization event as required by § 1.1361–16(b) is inconsistent with the progeny of *Eisner*, including *Braun* and *Wilcox*.

Thus, the Court cannot find a realization event in this case and therefore finds § 1.1361–16(b) invalid.

## V. RETROACTIVITY

In essence, regulation § 1.1361–16(b) seeks to tax as long term capital gains the increased net book value of the assets of Mid-Seven Transportation Co. since 1960, minus the income taxes paid by Mid-Seven from 1960 through 1968. This plan of taxation violates the due process clause of the Fifth Amendment.

The § 1361(a) election was available to taxpayers beginning in tax year 1955 and Mr. Simpson employed it beginning in tax year 1960. The election was irrevocable until 1966 when subsection (n) was added. Regulation § 1.1361–16(b), mentioning for the first time a possible corporate liquidation treatment, was promulgated in October 1968, more than 14 years after the enactment of § 1361, nearly eight years after Mid-Seven's initial § 1361(a) election, only two years after there was an indication that the § 1361(a) election would be anything other than irrevocable, and only two months prior to the date chosen for termination by operation of law. Yet, through § 1.1361–16(b), the government seeks to tax the increased value of the assets of Mid-Seven Transportation Co. from the very first day of its § 1361(a) election in 1960. The tax as applied in this case is retroactive for at least the six-year period between the 1960 election by Mid-Seven Transportation Co. and the 1966 amendment to § 1361 requiring termination by operation of law. The liquidation treatment of § 1.1361–16(b) could also apply to a proprietor who made the § 1361(a) election in 1955 as well, thus

---

8. For a thorough analysis and history of the United States Supreme Court's struggle with the income realization concept, see Lowdnes, "Current Conceptions of Taxable Income," 25 Ohio State Law Journal 151 (1964).

creating a 10-year period of retroactive taxation. In both instances, the tax is unreasonably harsh and oppressive and violates constitutional limitations.

█ It is well established that a tax is not necessarily invalid simply because it is retroactive. *Welch v. Henry*, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938). It is useful, therefore, to classify those types of cases in which retroactive taxing statutes have been upheld as constitutional. In *Comptroller of Treasury v. Glenn L. Martin Co.*, 216 Md. 235, 140 A.2d 288; *cert. denied*, 358 U.S. 820, 79 S.Ct. 34, 3 L.Ed.2d 62 (1958), a working classification of the retroactive tax cases was presented. Cases upholding retroactive taxing statutes were classified as (1) ratification cases; (2) correction of technical defects cases; and (3) "recent transactions" cases. 140 A.2d at 300.

In *Chuoco Tiaco v. Forbes*, 228 U.S. 549, 33 S.Ct. 585, 57 L.Ed. 960 (1913), Mr. Justice Holmes stated the ratification doctrine:

[I]t generally is recognized that . . where the act originally purports to be done in the name and by the authority of the state, a defect in that authority may be cured by the subsequent adoption of the act. The person who has assumed to represent the will and person of the superior power is given the benefit of the representation if it turns out that his assumption was correct. [cases cited].

The instant case clearly does not fit within the "ratification cases" classification. There has been no legislative ratification of the § 1.1361–16(b) corporate liquidation treatment. The regulation is unauthorized, and even if it were ratified by Congress, ratification could not relate back farther than 1966 when § 1361(n) was added, the section from which defendant claims authorization to promulgate regulation § 1.1361–16(b). The pre-1966 retroactive taxation occasioned by § 1.1361–16(b) would not be cured.

Nor may this case be classified as a "correction of technical defects case." Regulation 1.1361–16(b) did not cure a technical defect in § 1361. It created a new require-

ment for income realization upon termination of the § 1361(a) election. Once again, even if § 1.1361–16(b) is viewed as a cure of § 1361's failure to specifically state the income tax effects of a termination of election by operation of law under § 1361(n)(2), retroactive taxation would still exist for the period before the 1966 enactment of PL 89–389. Until that time, the § 1361 election was irrevocable and failure to state the income tax effect of an election termination by operation of law could not be viewed as a defect of § 1361. Termination was not possible and § 1.1361–16(b) cannot be upheld as a cure.

For similar reasons, this case does not fall within the classification of cases upholding retroactive taxing statutes on the basis of "recent transactions." Taxing the increased net book value of Mid-Seven Transportation Co. between 1960 and 1966 does not constitute a "recent transaction" within the cases so classified.

The "recent transactions" cases are the progeny of *Cooper v. United States*, 280 U.S. 409, 50 S.Ct. 164, 74 L.Ed. 516 (1930), and *Welch v. Henry*, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938). The *Welch* case upheld, over an objection based on the due process clause of the Fourteenth Amendment, a Wisconsin income tax statute legislated in 1935 which applied to dividends received in 1933. Implicit in *Welch v. Henry*, however, was the Supreme Court's opinion that a taxing statute could violate due process if it operated retroactively beyond some limited point in time. Significantly, the Court stated:

. . . we think that the "recent transactions" to which this Court has declared a tax law may be retroactively applied, *Cooper v. United States*, 280 U.S. 409, 50 S.Ct. 164, 74 L.Ed. 516 (1930), must be taken to include the receipt of income during the year of the legislative session preceding that of its enactment. 305 U.S. at 149, 59 S.Ct. at 127.

And, in the last sentence of the majority opinion Mr. Justice Stone also stated, "while the Supreme Court of Wisconsin, . . . thought that the present tax

might 'approach or reach the limit of permissible retroactivity', we cannot say that it exceeds it."

The United States Supreme Court thus intimated that there exists a time beyond which a taxing statute may not constitutionally be given retroactive effect. Indeed, the cases cited by the Supreme Court in *Welch* in supporting their conclusion that the 1935 Wisconsin taxing statute did not violate due process all involved retroactivity of very limited periods, and none of the cases alleged that a legislature may tax retroactively without a time limit. In fact, as stated in *Comptroller of Treasury v. Glenn L. Martin Co., supra*, subsequent state courts addressing the problem have refused to extend the permissible period of retroactivity beyond the two years allowed in *Welch v. Henry*.[9]

Thus, the Court is confronted by a case which does not fit within any of the usual classifications of cases upholding retroactive taxing statutes; this is not a "ratification" case, not a "correction of technical defects" case, or a "recent transactions" case. Confronting the same problem of failure to fit within one of the three working classifications, the Court in *Martin, supra*, cited *Wilgard Realty Co. v. Commissioner of Internal Revenue*, 127 F.2d 514, cert. denied, 317 U.S. 655, 63 S.Ct. 52, 87 L.Ed. 527 (1942); and *Forbes Pioneer Boat Line v. Board of Commissioners*, 258 U.S. 338, 42 S.Ct. 325, 66 L.Ed. 647 (1922) in support of the proposition that a taxpayer cannot complain of retroactive taxation which gives him exactly what he expected. Consistent with that proposition Mr. Justice Holmes commented in *Forbes Pioneer Boat Line*, that:

> It would seem . . . that the transaction was not one for which payment naturally could have been expected. *To say that the Legislature simply was establishing the situation as both parties knew it ought to be would be putting something of a gloss upon the facts.* We

must assume that the plaintiff . . . [was] relying upon its legal rights and it is not to be deprived of them. (emphasis added).

258 U.S. at 340, 42 S.Ct. at 326.

The *Martin* court found no indication in that case that the plaintiffs could have anticipated the retroactive taxes, and therefore, on the basis of *Wilgard* and *Forbes* found the taxing statute involved to be unconstitutionally retroactive.

The instant case is susceptible to the same reasoning and requires the same outcome as *Martin*. Mr. Simpson could not have anticipated a corporate liquidation treatment at least until 1965–66 when legislation, providing for the first time, § 1361 election revocation, was considered and finally enacted. By making the § 1361(a) election in 1960, Mr. Simpson, acting for Mid-Seven Transportation Co., made the then irrevocable decision to be taxed at corporate income tax rates. Mid-Seven thus had a right which the *Forbes, Martin* and *Wilgard* cases indicate cannot be retroactively denied. No theory of "ratification," or "cure of defect," can justify taxing Mid-Seven for tax years before 1965; and under the "recent transactions" cases, the taxation required by § 1.1361–16(b), dating to 1960 in this case, is beyond the constitutionally permissible period of retroactivity. Regulation 1.1361–16(b), requiring at least six years of retroactive taxation in this case and on its face conceivably 10 years in the case of a proprietorship electing under § 1361(a) in 1955, is in violation of the due process clause of the Fifth Amendment and therefore invalid.

## VI. CONCLUSIONS

The Court has concluded that regulation § 1.1361–16(b) is invalid for four separate reasons: (1) its promulgation was an abuse of discretion because unauthorized; (2) even if authorized, the corporate liquidation treatment required by the regulation is un-

---

**9.** *See, e. g., Martin*, supra; or *People ex rel. Beck v. Graves*, 280 N.Y. 405, 21 N.E.2d 371 (1939); *Lacidem Realty Corp. v. Graves*, 288 N.Y. 354, 43 N.E.2d 440 (1942); *Common-* wealth v. Budd Co., 379 Pa. 159, 108 A.2d 563 (1954); *Wheeler v. Comm.*, 143 F.2d 162 (9th Cir. 1945), *rev'd on other grounds*, 324 U.S. 542, 65 S.Ct. 799, 89 L.Ed. 1166.

reasonable; (3) it requires taxation in the absence of a transactional event resulting in realized income; and (4) it results in a retroactive tax that violates the due process clause of the Fifth Amendment.

Because § 1.1361–16(b) is invalid, plaintiffs are entitled to a refund for the taxes they paid in complying with its terms.

For the above reasons,

IT IS HEREBY ORDERED that the defendant's motion for summary judgment is denied, and the plaintiffs' motion for summary judgment is sustained.