# TIACO *v.* FORBES.

# TICO *v.* SAME.

# SY CHANG *v.* SAME.

## ERROR TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

Nos. 254, 255, 256. Argued April 24, 1913.—Decided May 5, 1913.

Where the act originally purports to be done in the name and by the authority of the State, a defect in that authority may be cured by the subsequent adoption of the act.

The deportation of a Chinaman from the Philippine Islands by the Governor General prior to an act of the legislature authorizing such deportation is to be considered as having been ordered in pursuance of such statute.

Sovereign states have inherent power to deport aliens, and Congress is not deprived of this power by the Constitution of the United States.

The ground on which the power to deport aliens rests necessitates that it may have to be exercised in a summary manner by executive officers.

Congress not being prevented by the Constitution from deporting

aliens, the Philippine Government cannot be prevented from so doing by the Bill of Rights incorporated in the act of July 1, 1902.

The deportation of aliens in this case, by the Philippine Government was not a deprivation of liberty without due process of law.

The local government of the Philippine Islands has all civil and judicial power necessary to govern the Islands, and this includes the power to deport aliens.

The extension by Congress of the Chinese Exclusion and Immigration Laws to the Philippine Islands does not prevent the Government of the Islands passing an act removing aliens therefrom.

The English rule is that an act of state is not cognizable in any municipal court. It is within the power of the legislature of the Philippine Islands to declare an act of the executive which is within its power to authorize to be not subject to question or review.

A statute which protects the executive protects the subordinates as well as the chief executive.

*Quære* whether the Governor of the Philippine Islands has authorit, by virtue of his office alone to deport aliens, or immunity from action for a deportation made in good faith whether he had the power or not.

*Quære* whether, historically speaking, prohibition was the proper remedy; but in this case this court should not interfere with the local practice in a matter relating to the administration of local statutes except for good cause shown.

The act of the Philippine legislature passed April 19, 1910, ratifying the action of the Governor General in ordering the deportation of plaintiffs, Chinamen, and declaring it to have been an exercise of authority vested in him by law in all respects legal and not subject to question or review, was within the power of the legislature, and took from the court, in whi : an action had been brought to enjoin the deportation, jurisdiction to try the case, and the judgment granting a writ of prohibition is affirmed.

THE facts, which involve the power of the Philippine Government to deport aliens, are stated in the opinion.

Mr. *Jackson H. Ralston* and Mr. *Clement L. Bouvé,* with whom Mr. *W. Morgan Shuster* and Mr. *Frederick L. Siddons* were on the brief, for plaintiffs in error:

The Court of First Instance at Manila had jurisdiction.

The contention that the act was an act of the State or performed by the defendant Forbes in his executive capac-

ity as Governor General did not oust the Court of First
Instance of jurisdiction. *Tindall* v. *Wesley*, 167 U. S. 204;
*United States* v. *Lee*, 106 U. S. 196; *United States* v. *Peters*,
5 Cranch, 115, 139; *Cunningham* v. *Macon &c. R. R. Co.*,
109 U. S. 446; *Belknap* v. *Schild*, 161 U. S. 10. And see
*Ex parte Tyler*, 149 U. S. 164, 190, citing *Pennoyer* v.
*MacConnaughy*, 140 U. S. 1, 10; *Stanley* v. *Schwalby*, 147
U. S. 508; *Ex parte Milligan*, 4 Wall. 2; *Kilbourne* v.
*Thompson*, 103 U. S. 168.

Not only was the jurisdiction of the Court of First In-
stance over the persons of the defendants in error and the
subject-matter clear, but the remedy of appeal was open
to them. *Eleizegui* v. *Tennis Club*, 1 Phil. Rep. 303.
There was no ground for the issuance of the extraordinary
writ of prohibition. High, Ext. Leg. Rem., § 767, § 764a;
*Ex parte Oklahoma*, 220 U. S. 191; *Ex parte Harding*, 219
U. S. 363; *Ex parte Gruetter*, 217 U. S. 586; *Ex parte
Nebraska*, 209 U. S. 436; *Re Pollitz*, 206 U. S. 323; *Re
Huguely Mfg. Co.*, 184 U. S. 297; *Re Atlantic City R. R.
Co.*, 164 U. S. 633; *Re Rice*, 155 U. S. 396; *Ex parte Cooper*,
143 U. S. 472; *Ex parte Gordon*, 104 U. S. 515; *Ex parte
Detroit Ferry Co.*, 104 U. S. 519; *Troegel* v. *Judge of City
Court*, 35 La. Ann. 1164; *Penn. R. R. Co.* v. *Rodgers*, 52
W. Va. 450; *Ex parte Green*, 29 Alabama, 52; *Ex parte
Pettison*, 33 Alabama, 74; *Ex parte State*, 51 Alabama, 60;
*Buskirk* v. *Judge of Circuit Court*, 7 W. Va. 91; *Murphy* v.
*Superior Court*, 58 California, 520; *State* v. *Burkhardt*, 87
Missouri, 533; *State* v. *Witherow*, 108 Missouri, 1; *State*
v. *Kline*, 116 Missouri, 259; *State* v. *Robinson*, 38 La.
Ann. 968; *State* v. *Fournet*, 45 La. Ann. 943; *Goldsmith* v.
*Owen*, 95 Kentucky, 420; *State* v. *Hocker*, 33 Florida, 283.

The Government of the Philippine Islands has no power
to deport aliens.

The authorities cited by the court on the existence of
an inherent power to deport foreigners sustain the prop-
osition only as to sovereign states in which that power

is inherent as an essential element of sovereignty. That power does exist inherently in sovereign States. *Chae Chan Ping* v. *United States*, 130 U. S. 531; *Fong Yue Ting* v. *United States*, 149 U. S. 698; *Chin Bak Kan* v. *United States*, 186 U. S. 193; *Ekiu* v. *United States*, 142 U. S. 651; *Turner* v. *Williams*, 194 U. S. 279; 1 Vattel, Law of Nations, c. 19, par. 230; 1 Phillimore, Int. Law, 3d ed., c. 10, p. 220; 2 Calvo, Le dr. int., 5th ed., French, par. 700; Bonfils, Manuel du Droit Int. Pub., par 442; Darut, de l'Expulsion des Etrangers: Aix, 1902; 4 Moore, Int. Law Dig., par. 550, p. 68; Martini, l'Expulsion des Etrangers, p. 14; Pradier Fodéré, Traité de Droit Int. Pub., par. 1857.

The Philippine Government, however, is not a sovereign community, at least in an international sense, but a mere dependency of the United States, limited to the exercise of such powers only as those with which it is vested by its organic act. Act of Congress July 1, 1902; *Fourteen Diamond Rings*, 183 U. S. 176, 179; *Snow* v. *United States*, 18 Wall. 317; *Dorr* v. *United States*, 195 U. S. 138, 148, citing Cooley, Principles of Const. Law, 164; *National Bank* v. *Yankton*, 101 U. S. 129; *Murphy* v. *Ramsey*, 114 U. S. 15; *Downes* v. *Bidwell*, 182 U. S. 244, 283; *Am. Ins. Co.* v. *Canter*, 1 Pet. 511, 542; *Territory* v. *Daniels*, 8 Utah, 188, S. C., 5 L. R. A. 144; *United States* v. *Bull*, 15 Phil. Rep. 7; *De Lima* v. *Bidwell*, 182 U. S. 1.

Since the source of all power in the government of the Philippine Islands is the Congress of the United States, it must follow that if it has the power to expel aliens it must have been granted that power by Congress, either directly or by necessary implication.

While Congress may assign to Federal officers, either in the United States or the Philippine Islands, the power to execute the provisions of such acts as Congress may pass regulating the exclusion or expulsion of foreigners from territory subject to the dominion of the United States, it is at least extremely doubtful whether it could

delegate to the Philippine government its sovereign power to exclude aliens. *Stoutenburgh* v. *Hennick,* 121 U. S. 141. In any event this power could only be exercised subject to the limitation of the due-process clause of the Federal Constitution and the Philippine Bill of Rights.

Congress has not delegated to the Philippine Government the power to exclude or expel foreigners.

The power was not delegated by the President's instructions to the Commission of April 7, 1900; the Executive Order of June 21, 1901; the Spooner Amendment; or the Organic Act of July 1, 1902. See 26 Ops. Atty. Gen., Dec. 10, 1906, pp. 91, 96; 24 Ops. Atty. Gen., pp. 534, 541.

Congress had already acted.

Aside from the absence of authority to be found in the organic act of the Philippines conferring the right, Congress, both prior to and after the passage of the organic act, had legislated for the Philippines regarding the regulation of the admission and exclusion of foreigners. See act of April 29, 1902, making all the Chinese exclusion laws in force in the United States applicable to the Philippines; also § 33 of the Immigration Act of March 3, 1903; § 33 of the present Immigration Act in force; § 6 of the act of February 6, 1905.

The regulation of the admission or exclusion of all aliens into or from the Philippine Islands was a subject never entrusted to that government or its officers (except to the extent of enforcing the immigration and exclusion laws of the United States applicable to the Philippines). *In re Allen,* 2 Phil. Rep. p. 630.

The regulation of the conditions under which foreigners may enter into and reside in the territory of the United States is incidental to the general and exclusive power vested in Congress to regulate commerce with foreign nations. *Head Money Cases,* 112 U. S. 580; *Ekiu* v. *United States,* 142 U. S. 651; *Turner* v. *Williams,* 194 U. S. 279; 25 Ops. Atty. Gen., pp. 563, 566.

The Governor General of the Philippines has no such power. *United States* v. *Heinszen & Co.*, 206 U. S. 370; *O'Reilly* v. *Brooke*, 142 Fed. Rep. 859, affirmed 209 U. S. 45, distinguished.

There being no power in the Philippine legislature to legislate regarding the exclusion of foreigners from the Philippines in the first instance, their action could not constitute a ratification of what was done by the Governor General.

The deportation of the plaintiffs in error was without due process of law.

The subject of the exclusion or expulsion of foreigners from any portion of the vast domains of the United States is one over which Congress has complete control. *Oceanic S. Nav. Co.* v. *Stranahan*, 214 U. S. 320, 340, and other cases cited *supra.*

Congress would not concede to a dependent community powers inherent in the United States as a sovereign member of the family of nations, and powers which the various States of the Union have essayed in vain to exercise. *Passenger Cases*, 7 How. 283; *Chy Lung* v. *Freeman*, 92 U. S. 275; *People* v. *Compagnie Trans.*, 107 U. S. 59.

The plaintiffs in error were entitled to maintain their residence in the Philippines under the Chinese Exclusion Laws and for these and other reasons their deportation was illegal and without due process of law.

*Mr. Felix Frankfurter*, with whom *Mr. Thurlow M. Gordon* and *Mr. George A. Malcolm* were on the brief, for defendants in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

The three plaintiffs in error severally sued the defendants in error, alleging that Mr. Forbes was the Governor

General of the Philippines, Trowbridge Chief of the Secret Service of Manila and Harding Chief of Police of the same; that the plaintiff was a Chinese person lawfully resident in the Philippines, and that the defendants forcibly deported the plaintiff to China and forcibly prevented his return for some months; that the plaintiff returned on March 29, 1910, and that the defendants threatened and were trying to expel the plaintiff again—Trowbridge and Harding acting throughout under the order of the defendant Forbes. There was a prayer for an injunction and damages. The defendants demurred but the demurrer was overruled and a temporary injunction granted. Thereupon Forbes, Harding and Trowbridge sued for writs of prohibition against the judge and the respective plaintiffs, alleging that the expulsion was carried out in the public interest and at the request of the proper representative of the Chinese Government in the Philippines, and was immediately reported to the Secretary of War. The complaints were demurred to, but the Supreme Court overruled the demurrers, granted the prohibition, and ordered the actions dismissed. The judge having declined to join in the applications for writs of error, was made a respondent, and the cases are here on the ground that the plaintiffs have been deprived of liberty without due process of law. Act of Congress, July 1, 1902, c. 1369, § 5. 32 Stat. 691, 692.

The purpose of the first suits, of course, was to make the Governor General personally answerable in damages for acts done by him by color of his office and in pursuance of what he deemed to be his duty, as well as to prevent his exercising similar power in the future. This sufficiently appears by the declarations, which suggest and do not exclude official action, and is alleged in the complaints for prohibition. On April 19, 1910 (Acts of Phil. Leg., No. 1986) in less than three weeks after the original suits were brought, the Philippine legislature passed an act

which, reciting that the Governor General had authorized the deportation 'in the exercise of authority vested in him by law,' enacted, that his action was "approved, ratified, confirmed, and in all respects declared legal and not subject to question or review." So that if ratification by that body can dispose of the matter no court has authority to entertain the suits.

The first doubt that naturally would occur is whether if a right of action had vested previously it could be taken away by such a statute. But it generally is recognized that in cases like the present, where the act originally purports to be done in the name and by the authority of the state, a defect in that authority may be cured by the subsequent adoption of the act. The person who has assumed to represent the will and person of the superior power is given the benefit of the representation if it turns out that his assumption was correct. *O'Reilly* v. *Brooke*, 209 U. S. 45, 52. *United States* v. *Heinszen & Co.*, 206 U. S. 370, 382. *The Paquete Habana*, 189 U. S. 453, 465. *Phillips* v. *Eyre*, L. R. 6 Q. B. 1, 23. *The Secretary of State* v. *Kamachee Boye Sahaba*, 13 Moore, P. C. 22, 86. Compare *West Side Belt R. R. Co.* v. *Pittsburgh Construction Co.*, 219 U. S. 92. *Dunbar* v. *Boston & Providence R. R. Co.*, 181 Massachusetts, 383, 385, 386.

Therefore the deportation is to be considered as having been ordered by the Governor General in pursuance of a statute of the Philippine legislature directing it, under their combined powers, and it is unnecessary to consider whether he had authority by virtue of his office alone, as declared by the statute, or whether, if he had not, he had immunity from suit for such an official act done in good faith. The former matter now is regulated by a later statute providing for a hearing, etc. No. 2113. February 1, 1912. On the question thus narrowed the preliminaries are plain. It is admitted that sovereign states have inherent power to deport aliens, and seemingly that

Congress is not deprived of this power by the Constitution of the United States. *Fong Yue Ting* v. *United States,* 149 U. S. 698, 707, 728. *Wong Wing* v. *United States,* 163 U. S. 228, 231. *Fok Yung Yo* v. *United States,* 185 U. S. 296, 302. *Turner* v. *Williams,* 194 U. S. 279, 289, 290. Furthermore, the very ground of the power in the necessities of public welfare shows that it may have to be exercised in a summary way through executive officers. *Fong Yue Ting* v. *United States, supra.* *United States* v. *Ju Toy,* 198 U. S. 253, 263. *Moyer* v. *Peabody,* 212 U. S. 78, 84, 85. So that the question is narrowed further to the inquiry whether the Philippine Government cannot do what unquestionably Congress might.

As Congress is not prevented by the Constitution, the Philippine Government cannot be prevented by the Philippine Bill of Rights alone. Act of July 1, 1902, c. 1369, § 5. 32 Stat. 691, 692. Deporting the plaintiffs was not depriving them of liberty without due process of law, unless on other grounds the local government was acting beyond its powers. But the local government has all civil and judicial power necessary to govern the Islands. Act of March 2, 1901, c. 803. 31 Stat. 895, 910. Act of July 1, 1902, c. 1369, § 1. 32 Stat. 691. The forms are different, but as in Hawaii the proximate source of private rights is local, whether they spring by inheritance from Spain or are created by Philippine legislation. See *Kawananakoa* v. *Polyblank,* 205 U. S. 349, 354; *Perez* v. *Fernandez,* 202 U. S. 80, 91, 92. It would be strange if a government so remote should be held bound to wait for the action of Congress in a matter that might touch its life unless dealt with at once and on the spot. On the contrary we are of opinion that it had the power as an incident of the self-determination, however limited, given to it by the United States.

By § 86 of the act of July 1, 1902, all laws passed by the Philippine Government are to be reported to Congress,

which reserves power to annul them. It is worthy of mention that the law under consideration was reported to Congress and has not been annulled. The extension of the Chinese exclusion and immigration laws to the Philippine Islands has no bearing on the matter. The right to remain, for instance, under the act of April 29, 1902, c. 641, § 4, 32 Stat. 176, does not prevail over a removal as an act of state.

It is held in England that an act of state is a matter not cognizable in any municipal court. *Musgrave* v. *Pulido*, 5 App. Cas. 103, 108. And that was the purport of the Philippine act declaring the deportation not subject to question or review. As the bill of rights did not stand in the way and the implied powers of the government sanctioned by Congress permitted it, there is no reason why the statute should not have full effect. It protected the subordinates as well as the Governor General and took jurisdiction from the court that attempted to try the case.

Whether prohibition is technically the proper remedy historically speaking, we need not inquire. On such a matter we should not interfere with local practice except for good cause shown. In substance the decision of the Supreme Court was right.

*Judgment affirmed.*