16425

JENNINGS v. CHARLESTON & W. C. RY. CO.

(62 S. E. (2d) 114)

*Messrs. M. G. McDonald,* of Greenwood, and *J. Moore Mars,* of Abbeville, *for Appellant,*

*Mr. B. E. Nicholson,* of Edgefield, *for Respondent,* 

November 6, 1950.

Oxner, Justice.

This action was brought to recover damages for the alleged wrongful closing of a railroad crossing in the Town of McCormick. The trial resulted in a verdict in favor of respondent for $1,500.00. From the judgment entered thereon, the Railway Company has appealed. The crucial question is whether the crossing was wrongfully closed by the Railway Company or lawfully closed by the Railway Company under authority from the Town of McCormick. The material facts are substantially as follows:

Respondent owns 1.81 acres of land in the Town of McCormick with a frontage of approximately 288 feet along the right of way of appellant. His residence faces the tracks. A public road led from the Town of McCormick, crossed appellant's tracks at a point near respondent's lot, thence ran along the northern edge of said lot, and continued into the country. There was also a driveway leading from said crossing which circled in front of respondent's residence and thence ran back into said public road. Respondent used this crossing in going to and from the Town of McCormick.

In the summer of 1946, the McCormick Spinning Corporation, which had recently constructed a new plant and

village in the Town of McCormick upon a tract of land adjoining the lot of respondent, desired that a new street be opened thorugh its property which would cross the tracks of appellant and enter alternate South Carolina Highway No. 28. It was proposed to open the new crossing at a point approximately 125 yards below the one used by respondent and then build a road on appellant's right of way from the old grade crossing to the new street, thus connecting the existing street with the new one. The McCormick Spinning Corporation took the matter up with the Railway Company which objected to the opening of an additional grade crossing in such close proximity to the existing one unless the old crossing was closed. The mill authorities thereupon presented the problem to the Town Council which, on September 2, 1946, adopted a resolution directing the Street Committee to investigate the question of closing the existing crossing, "with authority to act for the Council". At a special meeting of the Council held on October 2, 1946, according to the minutes, the following occurred: "That the Street Committee reports that they have agreed to close the railroad crossing as requested by the mill company, road to be built by mill company from existing street on railroad right of way to new crossing."

At the next regular meeting held on December 2, 1946, the minutes of the meeting held on October 2nd were read and adopted.

The Town Council of McCormick consisted of the mayor and six aldermen, three of whom were on the Street Committee. One of the members of this committee testified that he, along with the other two members, investigated the matter of closing the crossing but was not present when the other two agreed to do so and that he was not present at the council meetings held on October 2nd and December 2nd.

On May 26, 1947, the Town Clerk delivered to appellant's Engineer of Maintenance of Way a certificate setting out the action which had been taken by the Town Council. On Au-

gust 15, 1947, a section foreman, under instructions from the Engineer of Maintenance of Way, closed the crossing over the objection of respondent. A street was then opened on the right of way of appellant leading from the old crossing to the new paved crossing, a distance, as heretofore pointed out, of approimately 125 yards.

On December 5, 1947, respondent instituted this action. The case came on for trial before Judge Greneker in June, 1948, and on account of the inability of the jury to agree, a mistrial was ordered. Thereafter at a meeting of the Council held on July 6, 1948, the following resolution was passed:

"*Whereas,* the City Council at its meeting on September 2, 1946, authorized its Street Committee to investigate the matter of the closing of a crossing over the C. & W. C. Railway Company's track adjacent to and near the property of the McCormick Spinning Company and the opening of a new crossing approximately 125 yards below the existing crossing; and,

"*Whereas,* the said Committee reported to Council at its meeting on October 2, 1946, that it had authorized the closing of the old crossing, and it was then the purpose, intent and action of Council at such meeting to authorize, ratify and confirm the closing of such crossing, but it now appears that the minutes of said meeting do not clearly reflect such purpose, intent and action; and,

"*Whereas,* the above-mentioned minutes were read and approved at the next regular meeting of Council; and,

"*Whereas,* to have permitted the maintenance and use of two grade crossings in such close proximity to each other would have been extra hazardous, and as the new crossing is much less hazardous and better serves the public convenience and safety than the old crossing;

"*Be It Resolved:*

"1. That the closing of the crossing above referred to be and the same hereby is ratified, confirmed and approved as a measure furthering the public safety and convenience.

"2. That in view of the doubt as to the intent, purpose and action of Council at its meeting on October 2, 1946, as well as the subsequent regular meeting to authorize and confirm the closing of such crossing, this resolution is confirmatory of such intent, purpose and action and is amendatory of the minutes of such meeting so as to clearly reflect the same.

"3. If for any reason it should be held to be beyond the power of Council to now declare its purpose, intent and action at such meeting or to amend its minutes of same so as clearly to reflect the same, or to authorize or order retroactively the closing of said crossing, then the closing of same, for the reasons above stated, be and the same hereby is ordered as of the date of the adoption of this resolution."

Apparently the foregoing resolution was adopted as a result of questions raised during the first trial of this case. In October, 1948, there was a second trial before Special Judge McKendree Barr. He refused to admit in evidence the resolution of July 6, 1948, or to permit testimony thereabout. The jury was unable to agree on a verdict and a mistrial was ordered for the second time. Thereafter the appellant filed a supplemental answer, setting up as an additional defense the action taken by Council on July 6, 1948.

A third trial of the case was had before Judge Eatmon at the October, 1949, term, at which time, in accordance with prior notice, respondent moved to strike the new matter set up in the supplemental answer on the ground that it was legally insufficient to constitute a defense. This motion was granted on the ground that the allegations contained in this defense "attempt to construe the original resolution or the action of the Town Council", and on the further ground that the resolution of July 6, 1948, had "the effect of destroying the cause of action set up in the complaint." During the trial appellant sought to offer the resolution in evidence but the Court refused to admit it. At the close of the testimony, the Court refused a motion by appellant for a directed verdict made on the ground that the crossing was

closed by action of the Town Council. As heretofore stated, that trial resulted in a verdict in favor of respondent for $1,500.00.

It is agreed that appellant's exceptions raise the following questions:

I. Did the trial Judge err in striking appellant's third defense setting up the resolution of Town Council passed on July 6, 1948?

II. Did the trial Judge err in refusing to admit such resolution in evidence?

III. Did the trial Judge err in refusing to direct a verdict for appellant on the ground that the grade crossing had been closed under authority of Town Council, or if not, should this issue have been submitted to the jury?

The trial Judge apparently held that the original minutes of the Council were insufficient to constitute authority for the closing of this crossing. He charged the jury that while the statutory law empowered a town to close a street, this power could not be delegated to a committee of the Town Council but must be exercised at a duly constituted meeting of that body. We shall assume, without deciding, the correctness of this conclusion.

Appellant contends that even though the Street Committee could not lawfully act for the Town Council, the resolution of July 6, 1948, clearly shows that it was the intention of that body to adopt the report of that committee and authorize the closing of said crossing; and that the Town Council had the right to clarify, correct or amend its minutes by showing the true facts since respondent had acquired no vested rights on the faith of the original minutes. The power of a municipal council to correct its minutes is discussed in a lengthy annotation found in 3 A. L. R., beginning on page 1308. The question raised by appellant as to the right of the Town Council to correct its minutes by showing the adoption of the report of the Street Committee is an interesting one but we leave it undecided.

The only question we need determine is whether the Railway Company, having closed this crossing under color of authority from the Town, was relieved of liability by the action of the Town Council taken on July 6, 1948, when that body ratified and confirmed the action of the Railway Company in closing the crossing.

Respondent properly concedes that our statutes authorize a municipality to close a railroad crossing where it is necessary for the welfare and safety of the public. *Batson et al. v. Southern Railway Co.,* 106 S. C. 307, 91 S. E. 310. Of course, the power to vacate or close streets cannot be exercised by a municipality in an arbitrary manner, without regard to the interest and convenience of the public, or for the sole purpose of benefiting an abutting owner. *Bethel M. E. Church v. City of Greenville,* 211 S. C. 442, 45 S. E. (2d) 841. If a railroad crossing is closed by order of the municipal authorities, the railroad company is not liable. *Houston v. Town of West Greenville et al.,* 116 S. C. 248, 107 S. E. 902. But if an abutting property owner has suffered a special injury different in degree and kind from that suffered by the general public, he is entitled to compensation from such municipality. *Houston v. Town of West Greenville,* 126 S. C. 484, 120 S. E. 236 and 128 S. C. 478, 123 S. E. 100; *City of Rock Hill et al. v. Cothran et al.,* 209 S. C. 357, 40 S. E. (2d) 239.

It is the position of respondent that while the Town may have had the right to close the crossing, it was closed by appellant without authority from the Town, thereby giving rise to a cause of action in his favor, and that the resolution of July 6, 1948, cannot be given retroactive effect so as to justify the action of appellant and relieve it from liability. "It is a well-settled general rule that the Legislature, by a curative or validating statute which is necessarily retrospective in character and retroactive in effect, can 'validate any act which it might originally have authorized.'" *Green v. City of Rock Hill et al.,* 149 S. C. 234, 147 S. E. 346, 352.

In *Muldrow et al. v. Caldwell et al.,* 173 S. C. 243, 175 S. E. 501, 505, the Court said: "The General Assembly may enact retrospective legislation, unless it has the effect of impairing the obligation of a contract, or divesting vested rights of property." It is stated in 62 C. J. S., Municipal Corporations, § 432b, page 828: "If an ordinance enacted by a munnicipality is beyond its powers, no subsequent action in relation thereto by the municipality can give it validity, but, on the other hand, if a municipality has power to pass an ordinance and the enactment thereof is, for any reason, defective, the city council has power to validate it."

In *Atlanta & Charlotte Air Line Ry. Co. v. City of Easley,* 117 S. C. 494, 109 S. E. 285, 291, the town of Easley, without legislative authority, levied an assessment for street improvements. The railroad company refused to pay the assessment on the ground that it was illegal and unauthorized. At a subsequent session of the Legislature an act was passed ratifying and validating the assessment. The railroad company then sought to enjoin its collection. In upholding the validating act and sustaining the assessment, the Court said: "The Legislature validated and sanctioned an act which it might have originally authorized. The defect in the ordinance levying the assessment for want of prior legislative sanction was cured." The principle heretofore stated is further illustrated by the case of *Delaware, L. & W. R. Co. v. Chiara, et al.,* 3 Cir., 95 F. (2d) 663. In that case the plaintiff brought an action against the railroad company for personal injuries received when an automobile in which he was riding collided with a pier supporting a railroad bridge across Henderson Street in Jersey City. In erecting the bridge, the railroad company failed to follow the specifications laid down in the original ordinance so that the construction was unlawful and, therefore, a nuisance. Subsequently, however, the city authorities ratified and confirmed the bridge as constructed. The plaintiff contended that the structure was an unlawful one, constituting a nuisance, thereby rendering the railroad company liable in dam-

ages to anyone injured, but the Court held that the municipal authorities were authorized to ratify the structure of the bridge as it was actually built.

*Chuoco Tiaco v. Forbes et al.,* 228 U. S. 549, 33 S. Ct. 585, 586, 57 L. Ed. 960, involved an action for damages against the Governor General of the Philippines, personally, and others for unlawfully deporting the plaintiff to China. Several weeks after the action was instituted, the Philippine Legislature passed an act approving, ratifying and confirming the deportation. In upholding the act of ratification, the Court, speaking through Mr. Justice Holmes, said: "The first doubt that naturally would occur is whether, if a right of action had vested previously, it could be taken away by such a statute. But it generally is recognized that in cases like the present, where the act originally purports to be done in the name and by the authority of the state, a defect in that authority may be cured by the subsequent adoption of the act. The person who has assumed to represent the will and person of the superior power is given the benefit of the representation if it turns out that his assumption was correct."

In a footnote found in 16 C. J. S., Constitutional Law, § 254, page 675, a number of Federal cases are cited in support of the following statement: "Where asserted vested right arises from mistake of officers purporting to administer law, Legislature is not prevented from curing defect in administration because effect might be to destroy causes of action which would otherwise exist."

A question quite similar to the one before us was passed upon by the Supreme Court of North Carolina in *Wolfe v. Pearson,* 114 N. C. 621, 19 S. E. 264, 266. The plaintiff in that case owned a store building located on the corner of a public square in the city of Asheville. The defendant desired to make certain changes in the grade of the street in order to enhance the value of his property which was located near that of plaintiff. The proposed change necessitated digging and hauling away a part of the earth from the public square

in front of the plaintiff's building and tearing away and removing a part of a wall built by the plaintiff which extended into the street. The defendant approached the mayor about making the change and was told to go ahead and do the work. Defendant then hired a number of hands and against the protest of the plaintiff made the desired change in the grade of the street. Plaintiff promptly brought a suit against the defendant for damages. Defendant later learned that the mayor probably had no authority to authorize the project and reported the matter to the board of aldermen. That body then passed a resolution ratifying and approving the act of the defendant. Plaintiff recovered in the court below, but upon appeal the judgment was reversed. The Court pointed out that the city was authorized to change the grade of a street and held that the ratification by the board of aldermen was valid and related back to the original act. After stating that if one undertook to make a change in the grade of a street without authority from the municipality, he would render himself liable to any party injured, the Court said: "But the effect of a ratification by the city of an act done by an unauthorized person under color of authority from the city, which act, if it had been done by the city itself, would have been rightful, would be to relieve such person from liability as a trespasser. A municipal corporation has, by its charter, granted to it certain portions of the sovereignty of the state, for the purpose of assuring to the people the right of local self-government. It acts under delegated authority and, within the scope of its powers, it represents the sovereignty itself. And the fact that the ratification of defendant's act was done after action brought against him by the plaintiffs for the injury sustained cannot affect the result of such ratification. * * * The city had the right to grade the street, and by its subsequent assent it has, in effect, commanded the act complained of. If it were a person who had no right to do the act, and the same were done in its behalf, it would be a joint trespasser with the defendant, but, having that right, the defendant is relieved of liability if he assumed to do it for and on behalf of the city."

It is our conclusion from the foregoing authorities that the Court erred in refusing to consider the resolution of council passed on July 6, 1948, and that appellant was entitled to a directed verdict on the ground that by this resolution the Town Council ratified and adopted the act now complained of. The only reasonable inference warranted by the record is that appellant acted in good faith in the belief that it was authorized by the Town Council to close this crossing. It clearly appears that appellant assumed to act for the town under color of authority. The fact that the ratification did not take place until after this suit was commenced does not change the result. The resolution of July 6, 1948, had relation back and was equivalent to an authorization as of the time the crossing was closed. The only remedy open to respondent is an action against the Town of McCormick. We intimate no opinion as to whether such an action can be successfully prosecuted. The only question we now determine is that there is no liability on the part of appellant for the cause of action set forth in the complaint, which counsel for respondent construes as one "for permanent damage to land" resulting from the closing of the crossing.

Judgment reversed and the case is remanded for entry of judgment in favor of appellant.

BAKER, C. J., STUKES and TAYLOR, JJ., and L. D. LIDE, A. A. J., concur.