**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 24-1734**

───────────

ELIZA WILLE; LISA DENNING,

        Plaintiffs – Appellants,

and

SHELLEY CAREY,

        Plaintiff,

v.

HOWARD LUTNICK, in his official capacity as Secretary of Commerce; NATIONAL MARINE FISHERIES SERVICE; NEIL JACOBS, in his official capacity as Administrator of the National Oceanic and Atmospheric Administration; EUGENIO PIÑEIRO SOLER, in his official capacity as Assistant Administrator for Fisheries,

        Defendants – Appellees.

───────────

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Brendan A. Hurson, United States District Judge.  (8:22-cv-00689-BAH)

───────────

Argued: May 8, 2025                      Decided:  October 31, 2025

───────────

Before HARRIS, RICHARDSON, and HEYTENS, Circuit Judges

───────────

Affirmed by published opinion.  Judge Richardson wrote the opinion, in which Judges Harris and Heytens joined.

───────────

**ARGUED:** Michael Poon, PACIFIC LEGAL FOUNDATION, Sacramento, California, for Appellants.  Robert Parke Stockman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.  **ON BRIEF:** Damien M. Schiff, PACIFIC LEGAL FOUNDATION, Sacramento, California, for Appellants.  Todd Kim, Assistant Attorney General, John E. Bies, Environment and Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

2

RICHARDSON, Circuit Judge:

"Spinner dolphins are small, acrobatic dolphins that are known for their distinctive twisting leaps above the water." *Wille v. Raimondo*, 2024 WL 2832599, at *1 (D. Md. June 3, 2024). For their safety, the National Marine Fisheries Service regulated human contact with the dolphins. Plaintiffs, however, all "in some way relied on access to" the dolphins for "their livelihood[s]." *Id.*[1] Deprived of access to their flippered friends, they argue that constitutional infirmities invalidate the regulation. Plaintiffs specifically claim that the regulation is invalid under the Appointments Clause because it was signed and promulgated by someone who is not a principal officer. *See* U.S. Const. art. II, § 2, cl. 2. But after Plaintiffs filed suit, Dr. Richard Spinrad—the principal officer responsible for overseeing the Fisheries Service—ratified the regulation. Applying agency law, it is thus as if the regulation was promulgated by Spinrad in the first instance. Therefore, because that ratification alleviated any constitutional defects that may have existed with the regulation, we affirm this suit's dismissal.

## I.    BACKGROUND

The challenged regulation is known as the Approach Rule. We start with its history and ratification.

In September 2021, the Fisheries Service—and its parent agency, the National Oceanic and Atmospheric Administration (NOAA), a subagency within the Department of

---

[1] For example, Plaintiff Wille "is a psychotherapist who incorporated dolphin encounters into her practice as a form of experiential therapy," Carey is a boat captain who operated "dolphin swims," and Denning worked as a dolphin guide and ocean photographer. Opening Br. at 3.

3

Commerce—issued the Approach Rule. *See* 50 C.F.R. § 216.20 (the "Swim With and Approach Regulation for Hawaiian Spinner Dolphins Under the Marine Mammal Protection Act"). The underlying authority to promulgate the Rule stems from the Marine Mammal Protection Act, 16 U.S.C. § 1361 *et seq.* That Act authorizes the Secretaries of Commerce and the Interior to promulgate regulations to protect against the "taking" of marine mammals.[2] 16 U.S.C. §§ 1371(a), 1372, 1373, 1382. The Approach Rule protects spinner dolphins by barring people from approaching or remaining within 50 yards of a spinner dolphin.[3]

In the course of its promulgation, the Approach Rule went through the notice-and-comment process. During that process, the "notice of final rulemaking" for the Approach Rule was signed by Samuel Rauch, who was the Fisheries Service's Deputy Assistant Administrator for Regulatory Programs. 86 Fed. Reg. 53841. Rauch's asserted power to publish the Rule stemmed from a series of delegations. The Secretary of Commerce—at the time, Gina Raimondo—is the Cabinet Secretary to whom Congress delegated the power to enact regulations. In turn, the Secretary delegated her "authority to perform" the "functions prescribed by the Marine Mammal Protection Act" to the Under Secretary of

---

[2] "The term 'take' means to harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal." 16 U.S.C. § 1362(13).

[3] The Rule technically "prohibits people from approaching or remaining within 50 yards (45.7 m) of a spinner dolphin; swimming or attempting to swim within 50 yards (45.7 m) of a spinner dolphin; causing a vessel, person, or object to approach or remain within 50 yards (45.7 m) of a spinner dolphin; and intercepting, or placing a vessel, person, or other object in the path of a spinner dolphin so that the dolphin approaches within 50 yards (45.7 m) of the vessel, person, or object." 86 Fed. Reg. 53837.

Commerce for Oceans and Atmosphere, who is also the NOAA Administrator. J.A. 188–91. When Rauch signed the Rule for publication, the NOAA Administrator was Dr. Richard Spinrad. The delegation to Spinrad allowed him to redelegate his "authority to any employee of NOAA"—so Spinrad then delegated signing authority to Fisheries Assistant Administrator Janet Coit. J.A. 196; J.A. 201 (granting "authority to perform functions relating to . . . [s]ignature of material for publication in the Federal Register and the Code of Federal Regulations"). In turn, Coit delegated signing authority to Rauch, the Deputy Assistant Administrator for Regulatory Programs. J.A. 204. The power to sign for publication is the only power delegated to Rauch. *See id.* (listing as the only delegation "[s]ignature of material for publication in the Federal Register and the Code of Federal Regulations").

Plaintiffs sued in July 2022, seeking to have the Rule declared unconstitutional and to enjoin the government from enforcing it.[4] They argue that the delegations did not permit the Rule's promulgation because only constitutional officers who pass through the Appointments Clause's strictures may promulgate such regulations. Neither Coit (Assistant Administrator) nor Rauch (Deputy Assistant Administrator) qualifies, they argue. The government disagrees. But rather than fight over this constitutional issue, the government chose a different strategy. Spinrad ratified the Approach Rule. To do so, he signed a declaration that he "independently evaluated the Approach Rule and the basis for

---

[4] Plaintiffs seek only forward-looking relief as they have not been subjected to enforcement action under the Rule.

5

adopting it" and exercised his "independent judgment that the Approach Rule was and remains necessary." J.A. 237–39.

The government argues that Spinrad's ratification cured any Appointments Clause defects that may have existed when Rauch signed the Rule for publication. And Plaintiffs, in turn, argue that the ratification is either invalid or, if valid, failed to cure the defect. The district court found that the ratification was valid and cured any defects, so it granted summary judgment for the government.

Plaintiffs timely appealed.

## II.    DISCUSSION

In this appeal, constitutional and agency law converge. We begin by discussing the Appointments Clause and relevant principles of agency law. We then turn to the issue on appeal—whether ratification can cure an Appointments Clause defect in a regulation's promulgation.[5] Applying ordinary agency-law principles, we conclude that here Spinrad's ratification cured any constitutional defects that might have existed when the Rule was published. Finally, Spinrad's ratification was not impermissibly retroactive. We therefore affirm.

---

[5] Our review of this Appointments Clause challenge is *de novo*. *See K&R Contractors, LLC v. Keene*, 86 F.4th 135, 143 (4th Cir. 2023). And we review *de novo* the district court's interpretation of the Marine Mammal Protection Act and agency-law principles. *See South Carolina v. U.S. Army Corps. of Engineers*, 66 F.4th 189, 193 (4th Cir. 2023).

### A.      Appointments Clause

Article II of the Constitution vests "The executive Power" in the "President."  U.S. Const. art. II, § 1, cl. 1.  Thus "[t]he President is responsible for the actions of the Executive Branch and cannot delegate that *ultimate* responsibility" to anyone.  *United States v. Arthrex, Inc.*, 594 U.S. 1, 11 (2021) (emphasis added and quotation omitted).  But "[t]he Framers recognized" that "no single person could fulfill that responsibility alone and expected that the President would rely on subordinate officers for assistance."  *Id.* (quotation omitted).  Recognizing this challenge, the Appointments Clause specifies certain subordinates must be appointed.  U.S. Const. art. II, § 2, cl. 2.

The Appointments Clause provides that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers of the United States . . . but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." *Id.*  This Clause creates two distinctions.  The first is between those who are "Officers of the United States" and those who are not.  The second, and within the category of officers, is between those who are "inferior" officers and those who are a different kind of officer. We often call that latter kind a "principal" officer.  *See, e.g.*, *Morrison v. Olson*, 487 U.S. 654, 672 (1988).

The first distinction matters because only validly appointed officers may "exercise[] significant authority pursuant to the laws of the United States."  *Kennedy v. Braidwood Mgmt. Inc.*, 145 S. Ct. 2427, 2442 (2025) (quotation omitted).  But non-officers—mere "employee[s]"—cannot exercise such authority.  *Id.*

7

The second distinction—between principal and inferior officers—matters because only principal officers must receive Senate confirmation. "Generally speaking, whether one is an inferior officer depends on whether he has a superior other than the President, and how much power the officer exercises free from control by a superior." *Id.* (cleaned up). Those supervised only by the President must be approved by both political branches, but those directed and supervised by a principal officer can "be unilaterally appointed by the President or a Head of Department." *Id.*

Picking among these categories could have been the dispositive issue here. The parties disagree on what type of officer, if any, needed to promulgate the Approach Rule. But to avoid that fight, Spinrad—who all agree is a Senate-confirmed principal officer with the authority to promulgate the Rule—"ratified" the Rule.

## B. Agency-Law Ratification

Ratification is a doctrine derived from agency law that has long colored both constitutional and administrative-law questions. We start with the principal-agent relationship generally before turning to its application in the constitutional and administrative contexts in the next section.

A principal is the party who delegates authority and tasks to an agent, who acts on the principal's behalf. Agency is "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control." Restatement (Second) of Agency § 1(1) (1958) ("Restatement"). "The one for whom action is to be taken is the principal." *Id.* § 1(3). "The one who is to act is the agent." *Id.* § 1(3).

8

An agency relationship means that the "agent" "holds a power to alter the legal relations between the principal and third persons": "He has the power to affect the legal relations of the principal to *the same extent* as if the principal had so acted." *Id.* § 12 & cmt. *a.* (emphasis added). But an agent's power does not extend to any action. Typically, agents can affect the legal relations between the principal and third parties only where they have authority to act. An agent may act with actual authority—here, the agent can "affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent *to him*." *Id.* § 7 (emphasis added). Alternatively, an agent may possess apparent authority: The agent can affect the principal's legal relations with third parties based on the third party's reasonable belief—stemming from the principal's manifestations to the third party—that the agent has the authority to act for the principal. *Id.* § 8.

But sometimes an agent's actions can become binding on the principal and third parties even where the agent possesses no authority at all (whether actual or apparent) to act as he did. This can happen through ratification. Ratification is the principal's affirmation of a prior unauthorized act done by a purported agent. Restatement § 82 ("Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account."). Upon successful ratification, "the act" "is given effect as if originally authorized by" the principal. *Id.* Ratification is thus powerful medicine. It allows a principal to unilaterally transform an act which did not bind into one that does. *See, e.g., Clark's Ex'rs v. Van Riemsdyk*, 13 U.S. 153, 161 (1815) ("[T]he acts

9

of an agent, done without authority, may be so ratified and confirmed by his principals as to bind them in like manner as if an original authority had existed.").

Common-law ratification requires several conditions to be valid. The first is that the principal must affirm the agent's act. "Affirmance" occurs when the principal makes "a manifestation" that "an unauthorized act" should be "treat[ed]" "as authorized." Restatement § 83.[6] The next two are temporal: For ratification to be effective, the principal must possess the authority to authorize the act both when the agent initially took the action and when the principal ratifies it. *See id.* § 84(1) (An act "can be ratified" only "if, at the time of affirmance, [the principal] could authorize such an act."); § 84(2) (If the principal could "not have authorized" the "act" when it was "done," "he cannot" ordinarily "ratify" that act.). And a principal can delegate—and therefore ratify—only acts by an agent that do not require personal performance by the principal. § 17.[7]

There are a few more conditions. When the agent takes the action, he must be "purport[ing] to . . . act[] for the ratifier." *Id.* § 85. And when affirmed, the principal must know the "material facts involved in the original transaction." *Id.* § 91. Moreover, an affirmance "must occur before the" third party "has manifested his withdrawal from" the

---

[6] If a principal engages "in conduct" "justifiable only if there were such an election," that also may constitute affirmance. Restatement § 83.

[7] If the act must be done by the principal himself (*i.e.*, it requires personal performance), then the principal lacks the authority to authorize the agent to perform the act. And that means the act cannot be ratified. Restatement § 17 ("[I]f personal performance is required, the doing of the act by another on his behalf does not constitute performance by him."). For example, if state law requires that a testator personally execute a will, then the act of making a testamentary disposition cannot be delegated or ratified.

10

transaction "to the purported principal or to the agent." *Id.* § 88. Furthermore, a third party can void a ratification if the affirmance "occurs at a time when the situation has so materially changed that it would be inequitable to subject" the third party "to liability." *Id.* § 89. Finally, after a person's "[r]ights have [c]rystallized," ratification cannot be used to deprive the person of their right. *Id.* § 90.[8]

With these principles in tow, we turn to the purported ratification in this case.

### C.      Spinrad's Ratification Cured Any Appointments Clause Violation

We begin with an obvious, yet important, observation: the government functions through chains of principals and agents. So it is unremarkable that Spinrad used agents to act on his behalf. But his use of agents leaves us with two questions. First, whether ordinary agency principles like ratification govern officers and their use of agents; second, and if so, whether Spinrad's ratification was valid under these principles.

Principals may use agents only for tasks that they may authorize an agent to perform, so we begin there. The "President" "is authorized to . . . empower the head of any department or agency in the executive branch . . . to perform without approval . . . any function which is vested in the President." 3 U.S.C. § 301 (entitled "[g]eneral authorization to delegate functions"). So the President can authorize certain principal-officer agents— the heads of departments and executive agencies—to perform most tasks that he himself could perform. Here, the President has authorized the Secretary of Commerce to perform

---

[8] There are other rules, most of which are fairly intuitive, such as that the principal must have the requisite mental capacity to make an affirmance. *See, e.g.*, Restatement § 86.

any act "which is related to or incidental to, in support of, or necessary for, the operation of the programs" for which the Department of Commerce is responsible. Exec. Order No. 11564, 35 Fed. Reg. 15801 (Oct. 6, 1970). And the Secretary has "delegated" to the NOAA Administrator (who is appointed by the President with the advice and consent of the Senate) "authority to perform [certain] functions vested in the Secretary," including "functions prescribed by the [Marine Mammal Protection Act]." Sec'y of Com., Dep't. Org. Ord. 10-15 § 3.01(t) (December 12, 2011) (hereinafter "Organization Order"); 5 U.S.C. app. at 129 (Reorg. Plan No. 4 of 1970 § 2(b)). Among the functions prescribed by the Act is rulemaking concerning the taking of marine animals. *See* 16 U.S.C. §§ 1373(a), 1382(a).

NOAA's Administrator, in turn, is authorized by the Secretary to "delegate his/her authority . . . to any employee of NOAA." Organization Order § 3.05. The Administrator thus delegated authority to sign materials for publication and to perform the functions related to the Marine Mammal Protection Act to the Assistant Administrator for Fisheries, who is appointed by the Secretary and supervises the National Marine Fisheries Service. J.A. 201–02. Next, the Assistant Administrator for Fisheries delegated authority to "[sign] material for publication in the Federal Register and Code of Federal Regulations" to the Deputy Assistant Administrator for Regulatory Programs. J.A. 204.

"[I]t is generally accepted . . . that a governmental administrator vested with such authority may delegate unless expressly forbidden." *House v. S. Stevedoring Co.*, 703 F.2d 87, 88 (4th Cir. 1983); *see also United States v. Mango*, 199 F.3d 85, 89–92 (2d Cir. 1999) (upholding Secretary of the Army's delegation of authority to sign and issue discharge

12

permits to both district engineers and their designees who were lower-level employees). Thus, the internal departmental orders that permitted the delegations of authority from Secretary Raimondo to Administrator Spinrad to Assistant Administrator Coit to Deputy Assistant Administrator Rauch were presumably authorized by law.

Those delegations carry with them the ordinary agency principles that govern the use of delegated authority, including ratification. "Congress is understood to legislate against a background of common-law . . . principles." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). So we "may take it as given that Congress has" passed these statutes "with an expectation that" ordinary agency principles will apply absent "statutory" evidence "to the contrary." *Id.* (quoting *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952)). Any claim, then, that common-law agency principles like ratification don't apply requires some reason to think as much. On the contrary, Supreme Court precedent and Congress's clarification when ratification does *not* apply confirm that ratification operates within the Executive Branch.

To start, Congress has in other contexts specifically clarified when ratification is *not available*, *see* 5 U.S.C. § 3348, which supports the idea that ratification normally *can* validate otherwise illicit actions in the agency context. And the Supreme Court has consistently found that ratification can authorize otherwise illicit Executive actions. For example, in *FEC v. NRA Political Victory Fund*, the Supreme Court confronted an attempted ratification by the Solicitor General. 513 U.S. 88, 98 (1994). The FEC, which "lacks statutory authority" to "litigate" before the Supreme Court "file[d] a petition for certiorari." *Id.* To make such a filing, the FEC needed, but did not obtain, "the Solicitor

13

General's authorization." *Id.* (citing 28 C.F.R. § 0.20(a)). The Solicitor General later provided "after-the-fact authorization," but did so "more than 120 days after the deadline for filing a petition had passed." *Id.* (citing 28 U.S.C. § 2101(c)). In analyzing the effect of the attempted ratification, the Supreme Court was quite clear: "The question is at least *presumptively governed by principles of agency law*." *Id.* at 98 (emphasis added) (citing Restatement § 90). In that case, because the Solicitor General (the principal) "could not himself have filed a petition for certiorari on" the date the action was affirmed, the ratification was invalid. *Id.* at 98–99 (citing Restatement § 90 & cmt. *a*; also citing private-law agency cases). But while the ratification in that case was invalid, it was only so for reasons of agency law—not constitutional or statutory law.

Take another recent example. In *Braidwood Management*, the Court faced a situation in which inferior officers had been appointed by an agent of a department head for over 10 years. 145 S. Ct. at 2461. After the appointment of those officers was challenged in litigation, the relevant department head "ratified" the "previous appointments . . . and also re-appointed them." *Id.* The Supreme Court thus opined that the "fact that the Secretary did not begin personally appointing" the inferior officers "[wa]s irrelevant to whether" they were "properly appointed." *Id.* Given the Supreme Court's willingness to apply ordinary agency-law principles in the administrative-law context, we see no reason not to do the same.

Under those principles, Spinrad properly ratified the Approach Rule. First, once a dispute broke out as to the Rule's validity, Spinrad "affirmed" Rauch's publication of the Rule. J.A. 237. As NOAA Administrator, Spinrad "possess[ed] the requisite statutory

14

authority" under the Marine Mammal Protection Act to "promulgate the Approach Rule." J.A. 238. Plaintiffs conceded this point. Opening Br. at 45. What's more, there was a notice-and-comment period as required by 5 U.S.C. § 553(c). *See* Protective Regulations of Hawaiian Spinner Dolphins Under the Marine Mammal Protection Act, 81 Fed. Reg. 80629 (Reopening of Public Comment Period Nov 16, 2016) (final rule at 50 C.F.R. § 216.20). And the Rule was published within a "reasonable" time, as required by 5 U.S.C. § 555(b). Indeed, nobody has alleged that either the first promulgation, or the ratification which happened shortly thereafter, was unreasonably delayed. *See also Jooce v. FDA*, 981 F.3d 26, 29 (D.C. Cir. 2020) (finding a ratification effective in similar circumstances).

We thus have no doubt that Spinrad could have promulgated the Rule, in the first instance, when he affirmed Rauch's signature. And when he did so, he was clear that he "independently evaluated the Approach Rule and the basis for adopting it" and that he had "knowledge of the contents, purpose, and requirements of the Approach Rule." J.A. 238. Thus, Spinrad made a "manifestation" that Rauch's allegedly "unauthorized act" should be "treat[ed]" "as authorized," *see* Restatement § 83, and knew the "material facts involved in" Rauch's initial publication, *see id.* § 91.

Next, based on his power to delegate his "authority to any employee of NOAA," Organization Order § 3.05, Spinrad delegated the power to sign materials for publication to the Assistant Administrator for Fisheries: Janet Coit. J.A. 201–02. Coit, in turn, redelegated this power—*i.e.*, the power to sign materials for publication—to the Deputy Assistant Administrator for Regulatory Programs: Samuel Rauch. J.A. 204. Rauch then

15

signed the Rule for publication based on this delegated authority.[9]  Thus, when Rauch signed the Rule for publication, he "purported to be acting for the ratifier," *i.e.*, Spinrad (in his capacity as head of NOAA).  *Id.* § 85.

Because Spinrad had the authority to promulgate the Rule when it was initially published, his subsequent ratification of Rauch's signature made it such that he *did* promulgate it at that time, thereby curing any Appointments Clause defects that may have existed when the Rule was initially signed by Rauch.  True, Spinrad could ratify only those acts of Rauch that he could have originally delegated.  *See* Restatement § 84.  And Spinrad could delegate (and therefore ratify) only those acts of Rauch that were ministerial and did not require independent discretion.  *See id.* §§ 18 & cmt. *b*, 78.  Signing the Rule for publication constitutes just this sort of delegable, non-discretionary ministerial act, and was therefore ratifiable.[10]

And none of the limits on ratification described in the Restatement, all of which aim at avoiding inequity, apply here.  Recall that once a third party's "[r]ights have [c]rystallized," ratification cannot be used to deprive that person of their rights.

---

[9] As the district court found, the delegation only permitted Coit or Rauch to "sign regulations." *Wille*, 2024 WL 2832599, at *2; J.A 201 (granting the Assistant Administrator for Fisheries "authority to perform functions relating to . . . Signature of material for publication in the Federal Register and the Code of Federal Regulations"); J.A. 204 ("Delegations of Authority to the Deputy Assistant Administrator for Regulatory Programs": "Signature of material for publication in the Federal Register and the Code of Federal Regulations.").

[10] We assume, without deciding, that non-officers cannot be delegated the power to authorize rules for promulgation.  And we address here only the conclusion that when Rauch signed the rule, Spinrad could validly delegate signing authority.

16

Restatement § 90. Plaintiffs claim that their right to relief vested when they filed this suit, and so a *post hoc* ratification cannot alter that right. But the "mere commencement of [a] suit [does] not change the nature of" a litigant's "right[s]." *United States v. Heinszen*, 206 U.S. 370, 387 (1907). In *Heinszen*, the Supreme Court specifically found that the filing of a lawsuit does not take away a principal's ability to ratify his agent's action. *See id.*; *see also Chuoco Tiaco v. Forbes*, 228 U.S. 549, 555–56 (1913) (same); *Jooce*, 981 F.3d at 29 (same). The public also has several interests in the timing and content of federal regulations, none of which were infringed on in this ratification. For example, the public still received its right to notice and comment, as discussed above. *See* 5 U.S.C. § 553. Further, rules must be a "logical outgrowth" of the comments the agency receives, and Plaintiffs have not challenged that the Approach Rule was not. *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 174 (2007). The only harm Plaintiffs allege is that they are subject to a rule authorized by someone without the requisite authority—ratification, however, makes clear that the Rule was promulgated at the behest of someone with such authority. So ratification fixes Plaintiffs' problem. There's no inequity in that.

We also see no reason to think that signing rules for publication in the Federal Register is the type of action that requires personal performance and therefore cannot be delegated to an agent. *See* Restatement § 17. And no constitutional provision or statute limits the ability of an officer to delegate this responsibility to non-officers. Instead, Congress has gone out of its way in other contexts to specify when personal performance by the relevant officer is required. *See* 5 U.S.C. § 3348(a)(2) (referring to regulations that require certain actions "to be performed by the applicable officer (*and only that officer*)"

17

(emphasis added)). Congress has not passed any statute prohibiting the delegation of the power to sign regulations for publication to non-officer agents. *See* 16 U.S.C. § 1371.

This result does not ignore the Appointments Clause. The Appointments Clause ensures that those who exercise judicial and executive power are appointed and confirmed by the people's elected representatives. And that is what happened here. President Biden, and the Senate who confirmed Spinrad, were duly elected representatives. They appointed Spinrad to faithfully discharge his duties. Spinrad, like any other constitutional officer, authorized agents to act on his behalf. And using ordinary agency principles, Spinrad independently ratified the Rule and is therefore deemed to have validly promulgated it from the moment that it was signed. Thus, a constitutionally appointed officer promulgated the Rule, which is what the Appointments Clause contemplates.

We do not stand alone in reaching this conclusion. The D.C. Circuit has "repeatedly recognized that ratification can remedy a defect arising from the decision of" a non-constitutionally appointed officer. *Jooce*, 981 F.3d at 28. In *Jooce*, the FDA had "published a proposed rule to deem e-cigarettes, among other items, 'tobacco products' under" 21 U.S.C. § 387a(b). *Id.* at 27–28 (citing 79 Fed. Reg. 23,142, 23,143 (Apr. 25, 2014)). "After considering comments, FDA Associate Commissioner for Policy Leslie Kux promulgated a rule" "that deemed e-cigarettes to be 'tobacco products.'" *Id.* at 28 (citing 21 C.F.R. §§ 1100, 1140, 1143). But "Kux was not appointed as either an inferior or principal officer." *Id.* After the rule's validity was "questioned in litigation" on the grounds that it violated the Appointments Clause, "FDA Commissioners Robert Califf and Scott Gottlieb"—who unquestionably had the authority to promulgate the rule—

18

"ratifi[ed]" it. *Id.* at 28–29. The Court held that because the rule was "effectively ratified" according to agency-law principles, the "Appointments Clause objections" to "Kux's issuance" failed. *Id.* at 29.[11]

Officers delegate tasks—that is no surprise. All the evidence we have suggests that when officers use agents, ordinary agency principles apply. And applying those principles, it is as if Spinrad always promulgated the Approach Rule.

### D.    Ratification Is Not Impermissibly Retroactive

"Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). And "[b]y the same principle, a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Id.* Plaintiffs claim that because ratification is retroactive, and because Congress never explicitly authorized NOAA to promulgate retroactive regulations, Spinrad could not ratify the Approach Rule's publication.

---

[11] Today's decision does not conflict with the Supreme Court's decision in *Lucia v. SEC*, 585 U.S. 237 (2018). *Lucia* might be read to suggest that ratification cannot cure an Appointments Clause defect. *See id.* at 252 & n.6. But *Lucia* confronted the purported "ratification" of an *appointment* of constitutional officers. *Id.* But in its agency-law sense, ratification can retroactively cure *acts* but not *agents*. So a purported "ratification" that covers only one's status as an officer cannot retroactively bequeath officer status to a non-officer and thereby cure each and every unauthorized act performed by that non-officer. But ratification of a particular unauthorized act can cure that act—as is the case here.

Both premises are true, but Plaintiffs' conclusion does not follow. Ratification does, in some sense, have a retroactive effect—it reaches back and makes it so that a formerly unauthorized act was authorized from the get-go. And it is true that nothing in the Marine Mammal Protection Act—which formed the basis for the Approach Rule—explicitly authorizes retroactive regulations. But Plaintiffs' conclusion does not follow from their premises, for ratification is not "retroactive" in the sense contemplated and circumscribed by precedent.

Consider the Supreme Court's decision in *Bowen*. There, the Supreme Court evaluated legislation that provided "health care providers" "reimburse[ments] by the Government for expenses incurred in providing medical services to Medicare beneficiaries." *Bowen*, 488 U.S. at 205–07. Congress also had "authorized the Secretary of Health and Human Services to promulgate regulations setting limits on the levels of Medicare costs that w[ould] be reimbursed." *Id.* at 206. In 1981, the "Secretary issued a cost-limit schedule" which "provided that wages paid by Federal Government hospitals" to staff "would be excluded from" reimbursement. *Id.* That rule was invalidated because the Secretary failed to provide "notice and opportunity for public comment." *Id.* (citing 5 U.S.C. § 551 *et seq.*). Rather than appeal that decision, the Secretary waited a few years and in 1984 "published a notice seeking public comment on a proposal to reissue the 1981 wage-index rule, retroactive to" 1981. *Id.* at 207. The Secretary then "proceeded to recoup sums previously paid" as reimbursements. *Id.* Thus, even though the Secretary's original rule had been deemed invalid, "the net result was as if the original rule had never been set aside." *Id.* In other words, the regulation reached back in time and imposed liability where

20

it did not exist before. This is the kind of action that needed, but was missing, explicit authorization to promulgate retroactive rules.

This sort of retroactivity is materially distinct from the retroactivity effectuated by ratification. Disfavored retroactivity turns conduct that was considered lawful at the time into unlawful conduct; for example, it reaches back in time to regulate conduct that was not formerly regulated. Not so here. Recall that the principal must have the authority to authorize the action *both* when the action is initially performed by the agent, *and* when the act is affirmed (and thereby ratified) by the principal. *See* Restatement § 84(1)–(2). Because Spinrad independently validated the Rule's publication, the Rule existed from the moment that Rauch signed and published it.

The Supreme Court's *Heinszen* decision illustrates the distinction between these two senses of retroactivity and clarifies that ratification is not improperly retrospective. There, Congress retroactively ratified the President's imposition of a tariff. *Id.* at 385. But parties who were subject to the tariff before Congress's ratification argued that the tariff was the sort of tax that only Congress could levy. *Id.* The Court disagreed. Because "the United States could have originally authorized" the tariff, it "must be treated as if it were solely an original exercise by Congress." *Id.* at 385–86. And because "*there was a tariff in existence*" "when the goods were brought into the" United States, "the elementary principle of ratification" meant that the tariff was not "retrospective legislation." *Id.* (emphasis added). Ratification does not impose liability where there once was none—it confirms and validates liability that already existed.

21

Ratification also triggers none of the justifications that warrant limiting retroactive legislation, so we see no reason to extend *Bowen* and its ilk. The "presumption against retroactivity" is not "a constitutional imperative." Antonin Scalia & Brian A. Garner, *Reading Law* 261 (2012). Rather, it reflects "a general, almost invariable rule" that "a legislature makes law for the future, not the past." *Id.* But the Approach Rule did not reach back in time and criminalize past conduct—when it was signed, it prohibited future conduct. The no-retroactive-legislation rule "has consistently been explained by reference to the unfairness of imposing new burdens on persons after the fact." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994). But ratification does not upset "familiar considerations of fair notice, reasonable reliance, and settled expectations"; it imposes an obligation to follow a regulation that the government already claimed was validly promulgated. *Id.*; *see also Gonzalez v. Cuccinelli*, 985 F.3d 357, 372–73 (4th Cir. 2021). That obligation exists whenever legislation is passed, no matter whether a person has a claim that the legislation is invalid. *See, e.g.*, *Walker v. City of Birmingham*, 388 U.S. 307, 320 (1967). The Approach Rule was thus like any other statute or regulation whose validity is confirmed after its publication. In these circumstances, the presumption against retroactivity carries no weight.

\*　　　\*　　　\*

The Appointments Clause ensures that the political branches are ultimately accountable for the actions of those whom they authorize to exercise significant power. In this case, Spinrad's authorized agents carried out the authority vested in NOAA by Congress. Spinrad, through ratification, confirmed that his agents were indeed carrying

22

out his will.  Because ratification cured any potential infirmity in the Approach Rule, the district court is

*AFFIRMED*.